1

2    **WO**

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                      FOR THE DISTRICT OF ARIZONA

9

10   Manuel E Bustos,                        No. CV-22-00855-PHX-DJH

11                  Plaintiff,               **ORDER**

12   v.

13   Commissioner of Social Security
     Administration,
14
                     Defendant.
15

16          Mr. Manuel Bustos ("Plaintiff") seeks this Court's review of the Social Security

17   Administration ("SSA") Commissioner's (the "Commissioner") denial of his applications

18   for Social Security Disability Insurance ("SSDI") and Supplemental Security Income

19   ("SSI").  (Doc. 14 at 1).  Plaintiff has filed an Opening Brief, the Commissioner filed a

20   Response, and Plaintiff filed a Reply (Docs. 14; 15; 16).  Upon review of the briefs and the

21   Administrative Record (Doc. 11, "AR"), the Court affirms the Administrative Law Judge's

22   decision (AR at 21–33).

23   **I.     Background**

24          Plaintiff filed applications for SSDI and SSI benefits on September 18, 2019, and

25   November 30, 2020, respectively, based on a disability beginning on December 30, 2017.

26   (AR at 21).   Both applications allege that Plaintiff initially became disabled as of

27   December 30, 2017, when Plaintiff was twenty-seven years old.  (*Id*. at 242, 21).  Plaintiff's

28   past relevant work includes work he performed as a stocker.  (*Id*. at 31).  Plaintiff claims

1   he is unable to work due to various mental disabilities as well as hand tremors.  (*Id*. at 151).

2   Plaintiff's applications for SSDI and SSI were denied by the SSA and Plaintiff requested a

3   hearing to determine whether he was disabled under the Social Security Act.  (*Id*. at 21).

4         On December 9, 2020, Administrative Law Judge Laura Speck Havens (the "ALJ")

5   held a telephonic hearing to determine whether Plaintiff is disabled. Plaintiff was twenty-

6   nine years old at the time of the December 2020 hearing and has a high school diploma.

7   (*Id*. at 57).   A supplemental hearing was convened on May 12, 2021, after Plaintiff

8   underwent a consultative examination with Dr. Julian Kivowitz ("Dr. Kivowitz").  (*Id*. at

9   21).  The ALJ found, in a written order issued after the supplemental hearing, that Plaintiff

10  was not disabled under the Social Security Act.  (*Id*. at 33).  To reach this finding, the ALJ

11  followed a five-step process that the SSA has established for disability hearings.

12  **II.      The ALJ's Five Step Process**

13        To be eligible for Social Security benefits, a claimant must show an "inability to

14  engage in any substantial gainful activity by reason of any medically determinable physical

15  or mental impairment which can be expected to result in death or which has lasted or can

16  be expected to last for a continuous period of not less than 12 months."   42 U.S.C.

17  § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The ALJ

18  follows a five-step process[1] to determine whether a claimant is disabled for purposes of the

19  Social Security Act ("the Act"):

20        The five-step process for disability determinations begins, at the first and
21        second steps, by asking whether a claimant is engaged in "substantial gainful
          activity" and considering the severity of the claimant's impairments.
22        *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii).  If the inquiry continues beyond the
23        second step, the third step asks whether the claimant's impairment or
          combination of impairments meets or equals a listing under
24        20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement.
          *See id*. § 416.920(a)(4)(iii).  If so, the claimant is considered disabled and
25        benefits are awarded, ending the inquiry.  *See id*.  If the process continues
26        beyond the third step, the fourth and fifth steps consider the claimant's

27  _____
28  [1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the
    Commissioner at step five.  *Tackett*, 180 F.3d at 1098.

"residual functional capacity"[2] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g).   If the ALJ determines no such work is available, the claimant is disabled. *Id*. § 404.1520(a)(4)(v).

After applying this five-step process, the ALJ found that Plaintiff was not disabled and not entitled to benefits.  (AR at 33).  At the first and second steps of the five-step inquiry, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability and that he had several severe impairments, including depression, bipolar disorder, anxiety and specific learning disorder.  (*Id*. at 24).  At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (*Id*. at 25).

At step four, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels but with the following nonexertional limitations: Claimant can understand, remember and carryout simple job instructions only with only occasional interaction with the public, coworkers and supervisors."  (*Id*. at 27).  In making this determination, the ALJ discredited Plaintiff's testimony about the extent of his impairments, as well as opinions by medical expert Neil Horowitz, Ph.D. ("Dr. Horowitz").  (*Id*. at 28).  The ALJ found that these statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (*Id*.).  The ALJ also found that Plaintiff was unable to perform any past relevant work.  (*Id*. at 31). Finally, at step five, the ALJ concluded that Plaintiff could make an adjustment to other work that exists in significant numbers in the national economy—considering Plaintiff's

---

[2] A claimant's "residual functional capacity" is defined as their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

age, education, work experience, and RFC. (*Id.* at 32). Thus, the Court must determine whether this decision by the ALJ below was erroneous.

**III.   Standard of Review**

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by "substantial evidence" or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Substantial evidence is the type of evidence that would suffice, at trial, to avoid a directed verdict. *See Nat'l Labor Relations Bd. v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn*, 495 F.3d at 630. The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.* at 954 (citations omitted).

**IV.   Discussion**

Plaintiff argues the ALJ erred by (1) discrediting his own symptom testimony; and (2) by rejecting the assessment by his examining psychologist, Dr. Horowitz.

(Doc. 14 at 1).   Plaintiff asks this Court to remand for an award of benefits, or in the alternative, to remand for further proceedings.  (*Id.* at 17–18).  Commissioner argues that the ALJ's decision should be affirmed as it is free from harmful error.  (Doc. 15 at 2).

### A.    Plaintiff's Symptom Testimony

Plaintiff first argues that the ALJ erred by rejecting his symptom testimony without providing specific, clear, and convincing reasons supported by substantial evidence to do so.  (Doc. X at 8).  The Court disagrees.

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)).  Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings regarding the Plaintiff's credibility are insufficient.  *Id*.  "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "[T]he ALJ may consider inconsistencies either in the claimant's

testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id* (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Plaintiff testified at both the hearing on December 9, 2020, and the supplemental hearing on May 12, 2021. (AR at 41, 52). Plaintiff testified that he could not perform the job of a cashier due to anxiety and panic attacks. (*Id.* at 62). He also testified that he could not perform the duties of a stocker either because he could not perform the task at a reasonable pace. (*Id.*) After the Plaintiff testified, the vocational expert, Ms. Lynda Berkley, testified that, given Plaintiff's limitations, he could not perform the job of a stocker, but that he could perform other work. (*Id.* at 64).

At the supplemental hearing, Plaintiff testified that his mental health had improved since the last hearing five months earlier. (*Id.* at 44). Dr. Kivowitz, an impartial medical examiner, also testified at the supplemental hearing. (*Id.* at 46). Dr. Kivowitz testified that, in his opinion, Plaintiff has depression and anxiety, but that Plaintiff only has moderate impairments. (AR at 48). Dr. Kivowitz also testified that Plaintiff should be limited to simple, repetitive tasks and should only have occasional contact with peers, the public, and supervisors. (*Id.*) Aside from this, however, Dr. Kivowitz opined that Plaintiff had no other work-related restrictions. (*Id.*) Dr. Kivowitz also testified that Plaintiff was given a mini-mental status exam, where he scored a twenty-eight out of thirty possible points, and that no further cognitive testing was necessary. (*Id.* at 40 citing *id.* at 1019 (Psychological Report by Dr. Michael Moore)).

After the supplemental hearing, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 33). The ALJ acknowledged that Plaintiff had several severe impairments, including depression, bipolar disorder, anxiety and specific learning disorder. (*Id.* at 24). However, based on the entire record, including Plaintiff's own testimony, the ALJ found that Plaintiff

1    has the RFC to perform a full range of work at all exertional levels with some limitations.
2    (*Id*. at 27).

3        To support this finding, the ALJ stated that Plaintiff's allegations were not "entirely
4    consistent" with the medical evidence and other evidence in the record.  (*Id*. at 28).  The
5    ALJ noted that Plaintiff testified that he stopped working due to a mental breakdown and
6    suicide attempt but reconciled this testimony with the fact that Plaintiff worked at JCPenny
7    as a seasonal hire and "enjoyed" the work there.  (*Id* citing Ex. 6F, 20; *id*. 57–58).  The
8    ALJ also noted that, according to Plaintiff's mother, Plaintiff has lived independently on
9    his own for the past five years.[3]  (*Id* citing Ex. 20E).  The ALJ further noted that Plaintiff's
10    conditions were improving due to medication and psychotherapy.  (AR at 30).

11        Ultimately, the ALJ found Plaintiff's allegations were inconsistent with his reported
12    activities, stating that Plaintiff testified that he would receive assistance from his father,
13    but that "the claimant's mother submitted a [December 5, 2020,] statement that the
14    claimant has lived independently for the past five years, with reminders from her to
15    complete some household related activities." (*Id*. at 28).  Similarly, regarding Plaintiff's
16    learning disorder, Plaintiff's IQ was measured at an 80 in 2010, but Plaintiff scored an 82
17    on an updated test in 2012.[4]  (*Id*. at 28).  The ALJ also noted that Plaintiff played video
18    games eight hours a day.  (*Id*.)  Due to this evidence, the ALJ found that limiting Plaintiff
19    to simple job instructions would address his learning disorder.  (*Id*. at 28–29).  The ALJ
20    additionally addressed the inconsistency of Plaintiff's allegations to his daily activities,
21    finding that Plaintiff had no more than a moderate limitation in any broad area of
22    functioning and that the RFC assessment reflected the ALJ's moderate limitation findings.
23    (*Id*. at 25).

24        The ALJ provided sufficient reasoning in her order for this Court to meaningfully
25    determine whether the ALJ's conclusions were supported by substantial evidence.
26    *Treichler*, 775 F.3d at 1099 (stating that the ALJ "must provide some reasoning in order

27
28
_____

[3] At the hearing, Plaintiff testified that his father lives with him.  (AR at 58).

[4] "The mean IQ test score is 100." *Hall v. Fla.*, 572 U.S. 701, 711 (2014).

for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence"). The ALJ found that there were inconsistencies in the evidence in the record, such as the discrepancy between Plaintiff's testimony and his mother's letter. (*Id*. at 31). "The Court does not read the ALJ's 'not entirely consistent' statement [ ] as requiring Plaintiff to fully corroborate her symptom testimony with objective medical evidence. Instead, the ALJ's statement merely notes that the record contains conflicting evidence." *McPherson v. Comm'r of Soc. Sec. Admin*., 2021 WL 3709845, at *7 (D. Ariz. Aug. 20, 2021). Because the ALJ found that Plaintiff "engages in daily activities [that are] inconsistent with [his] alleged symptoms," her decision to "reject" Plaintiff's symptom testimony is supported by substantial evidence. *Molina*, 674 F.3d at 1112 (internal citations omitted).

Given the scope of the record, the ALJ properly relied upon objective medical evidence to find that Plaintiff's allegations were inconsistent with the record. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Here, the evidence is susceptible to more than one rational interpretation, therefore, the ALJ's conclusion must be upheld. Furthermore, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. The ALJ did so here. Thus, the Court concludes that the ALJ did not err in rejecting Plaintiff's pain and symptom testimony. The ALJ provided specific, clear, and convincing reasons to dismiss Plaintiff's claims and those reasons are supported by substantial evidence. *Molina*, 674 F.3d at 1112.

### B.     The Medical Opinions

Plaintiff also argues that the ALJ committed legal error by failing to articulate and explain her finding that Dr. Horowitz' opinion was not persuasive and failed to explain a rational and reasonable basis for consideration of the supportability and consistency factors when analyzing medical opinions. (Doc. 14 at 15). The Court is not persuaded.

The SSA recently revised its regulations regarding the evaluation of medical

evidence from medical providers. *See* 20 C.F.R. § 416.920c. Previously, the SSA favored the medical opinions of treating healthcare providers over non-treating providers. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians."). The changes to Section 416.920c effectively displaced the former hierarchy of medical opinions. *See Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The new regulations eliminate the previous hierarchy of medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions. The new regulations state:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are *supportability* (paragraph (c)(1) of this section) and *consistency* (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

20 C.F.R. § 416.920c (emphasis added).[5]

The longstanding rule that assigned "presumptive weight based on the extent of the doctor's relationship with the claimant [] no longer applies." *Woods*, 32 F.4th at 787. An ALJ no longer needs to articulate "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion. *Id*. at 792. "Now, an ALJ's decision . . . to discredit *any* medical opinion, must simply be supported by substantial evidence." *Id*. at 787 (emphasis added).

Even under the new regulations, however, an ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b),

---

[5] Other factors that may be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id*. § 404.1520c(b)(2)." *Id*. at 792.  The SSA regulations provide that the most important factors to consider when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a).  Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence." *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).

Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).  *Woods* makes clear that to properly reject a medical opinion under the substantial evidence standard, the ALJ "must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." *Id*. (quoting 20 C.F.R. § 404.1520c(b)).

Thus, the narrow issue before the Court is whether the ALJ provided an explanation supported by substantial evidence when rejecting Dr. Horowitz's medical opinions.  The Court concludes that she did.

Below, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels with some limitations.  (AR at 27).  To reach this finding, the ALJ reviewed evidence from SSA psychological consultants Eugene Campbell, Ph.D., and Hillary Weiss, Ph.D.; consultative examiner Neil Horowitz, Ph.D.; medical expert Julian Kivowitz, M.D.; and medical provider Michael Moore, Ph.D. ("Dr. Moore"). Plaintiff limits his argument to Dr. Horowitz' medical opinion.  (*See* OB at 15-17; AR at 29-31).

The ALJ stated that she considered Dr. Horowitz' opinion, but that she ultimately found him unpersuasive.  (AR at 30).  Dr. Horowitz examined Plaintiff on September 25, 2018, and diagnosed Plaintiff with major depressive disorder, anxious distress and psychotic features as well as learning disabilities.  (*Id*. at 592, 594).  Based on his diagnosis, Dr. Horowitz opined that Plaintiff's limitations would last twelve continuous months.  (*Id*.

at 595).  Dr. Horowitz also reported that Plaintiff is not capable of tasks that require sustained concentration or social interaction as he loses track of what he is doing, has a history of explosive or erratic behavior, has difficulty sustaining focus, and experiences voices telling him to leave or quit and is sometimes unaware of this behavior.  (*Id.*).

The ALJ did not find Dr. Horowitz' opinion persuasive because Dr. Horowitz examined Plaintiff shortly after Plaintiff began taking medication to treat his conditions and Plaintiff's records show that he has "responded well to medication management and counseling."  (*Id.* at 30).  The ALJ also stated that this finding was supported by the fact that Plaintiff's "symptoms did not last for at least 12 continuous months at this severe level, particularly considering that prior to the admission he had not been treated for his mental impairments and was using marijuana (without a medical marijuana card) to calm himself." (*Id.*)

Dr. Horowitz' medical opinion is but a piece of the puzzle which the ALJ used to support his decision—a decision which the Court concludes is supported by substantial evidence.  The ALJ noted in her decision that Plaintiff was treated inpatient from January 19–24, 2018, because he began to hear voices telling him to kill himself.  (*Id.* at 29). Plaintiff was discharged with prescriptions to alleviate his symptoms.  (*Id.*)  The ALJ also noted that Plaintiff was seen outpatient and that after his medications were changed, he reported no side effects from his medication, only occasional anxiety, better control over his temper and improvement in his paranoia and auditory hallucinations.  (*Id.* at 29).  An April 2020, note from his primary care provider indicated his psychiatric conditions were well controlled on medication.  (*Id.* at 30).  Based on the totality of the medical evidence, objective findings, and the opinions of the individuals who had the opportunity to assess Plaintiff, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels with some limitations.  (*Id.* at 27).

The ALJ also considered the medical opinions of Dr. Moore, the consultative examiner, and Dr. Kivowitz, an impartial medical expert, and found their opinions partially persuasive.  Dr. Moore found that Plaintiff had several moderate impairments in his ability

to accomplish tasks and interact with others.  (*Id*. at 1013–1014).  Dr. Moore also reported that Plaintiff's condition had improved with medication and psychotherapy but noted that his symptoms would likely worsen if he were to deviate from his treatment plan. (*Id*. at 1019–1020).   As for Dr. Kivowitz, he testified at the hearing that Plaintiff has depression and anxiety and that he has moderate limitations in all four functional domains. (*Id*. at 28).  Based on this, Dr. Kivowitz opined that Plaintiff should be limited to simple routine tasks with only occasional interaction with peers, the public, and supervisors. (*See id*).

Based on the above, the Court concludes that the ALJ's decision is supported by substantial evidence.   The evidence in the record that the ALJ relied on to reach her conclusion is susceptible to more than one rational interpretation, therefore, the ALJ's conclusion must be upheld.  *See Thomas*, 278 F.3d at 954 ("[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").   Furthermore, the ALJ sufficiently established the supportability and consistency factors.  *See* 416.920c (stating that the most important factors considered in disability proceedings are "supportability" and "consistency.").

In her written opinion, the ALJ stated that she reviewed the medical opinions of Dr. Horowitz, Dr. Moore, and Dr. Kivowitz.  (AR at 30-31).  The ALJ did not find Dr. Horowitz opinion persuasive, but she did find Dr. Moore and Dr. Kivowitz persuasive. (*Id*.).  The ALJ came to these findings by taking into account the supportability and consistency of each of these opinions.  The ALJ found that Dr. Horowitz' opinion was not supported by the other relevant medical evidence in the record because Dr. Horowitz examined Plaintiff shortly after he began taking medications to manage his impairments and because his symptoms did not last twelve consecutive months.  (AR at 30).  The ALJ also noted that Plaintiff was using marijuana without a medical marijuana card to calm himself down.  (*Id*.)  Thus, Dr. Horowitz' opinion was not persuasive because it was not supported by the relevant objective medical evidence. *Woods*, 32 F.4th at 791-792 (stating

that "supportability" refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence."). Furthermore, the ALJ also found that a statement from Plaintiff's mother was persuasive as she indicated that Plaintiff was more functional than what he himself had claimed. (AR at 30). Thus, in the aggregate, Dr. Horowitz' opinion was not consistent with the evidence from other medical and nonmedical sources in the record. *See id.* (stating that consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim").

The ALJ is responsible for resolving conflicts in the testimony, determining credibility, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. The ALJ did so here by weighing the evidence and finding that Dr. Horowitz was unpersuasive based on the supportability and consistency of his opinion. (AR at 30). This Court will not reweigh the evidence on appeal. *See Trejo v. Colvin*, 2016 WL 769106, at *3 (C.D. Cal. Jan. 28, 2016) ("This Court does not reweigh the evidence or act as a next-level fact-finder on appeal; its appellate review is limited to determining whether the agency committed reversible legal error."). Thus, the ALJ met her burden to articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings. *See Woods*, 32 F.4th at 792 (stating that "The agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."). Accordingly, the ALJ's decision to discredit Dr. Horowitz' medical opinion is supported by substantial evidence.

**V.    Conclusion**

For the reasons set forth above, the Court concludes that substantial evidence supports the ALJ's nondisability determination. The ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons supported by substantial evidence, and properly considered the medical opinion evidence of record.

Therefore, the Court finds that the ALJ did not err in her decision, which is based on substantial evidence.  The Court need not reach the merits of Plaintiff's request to remand for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge (AR at 21–33) is **AFFIRMED**.  The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 18th day of September, 2023.


Honorable Diane J. Humetewa
United States District Judge